## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| DENNIS ERWIN, Individually and as Executor of the Estate of SUSAN ERWIN, deceased,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>FORD MOTOR COMPANY and ALBERT MCCLINTON, individually<br><br>　　　　　　Defendants. | :<br>:　Case No. 1:16-cv-00874-SLR<br>:<br>:<br>:　TRIAL BY JURY OF<br>:　TWELVE DEMANDED<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

### JOINT PROPOSED COMPLEX CASE SCHEDULING ORDER

At Wilmington this ___ day of December, 2016, the parties having satisfied their obligations under Fed. R. Civ. P. 26(f), and the court having conducted a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a) and (b);

IT IS ORDERED that:

1.　Pre-Discovery Disclosures. The parties will exchange by January 6, 2017, the information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2.　**Discovery**.

　　**(a)　The Parties' Positions.**

**Plaintiff's Statement:** The greatest amount of discovery will be required related to issues of liability. The specific liability issue arises from a side impact collision between two vehicles in which the side airbag in the plaintiff's decedent did not deploy.

　　This non-deployment gives rise to numerous technical discovery matters. It is complicated by the fact that many of the documents which describe the various components of a side impact airbag system and the crash sensor system which supports it are considered trade secrets and proprietary by the defendant. As such there is very little technical information about the manner in which the airbag system and its subcomponents are designed, tested, and performed. The plaintiff alleges that the crash was one in which an airbag should have deployed, and discovery is needed to specifically identify which of the many potential components allegedly failed or was defectively designed.

For an airbag system, Plaintiff maintains that this would include the airbag cushion itself; the module in which it is mounted; the method of mounting the module; the igniters utilized to create the detonation for deployment and the circuitry to those igniters; the types, numbers, and locations of the sensors which are utilized to initially identify that a collision is taking place; then determine whether or not the collision was one which would require the deployment of the side airbag; and then deploy that airbag in a timely manner (i.e. in time to be helpful to the occupant). Discovery is needed to determine what the deployment strategy was, and its adequacy, for the side airbag (i.e. the types of collisions in terms of speed, angle and impact position for which it was designed to deploy); the performance of the system with different types of sensors (e.g. impact sensors or pressure sensors); the integration of the different types of sensors into the process of the deployment decisions; the ability of the Sensor system to self-diagnose itself and the types of defects the self-diagnosis can detect; the circuitry between the sensors including the actual side impact sensors communication with the central Restraint Control Module. Thousands of pages of crash test reports, video and still images must be evaluated in detail. This includes crush characteristics of the various vehicle side structure components. The method of calibrating sensors in terms of the ability to perform the crash sensing function and then transmit information to a deployment algorithm is a critical in detail process. The actual performance of the airbags when they deploy is also a crucial subject for discovery.

Because these are not publicly available documents, Erwin cannot evaluate all of these documents until they are produced. Once they are produced and evaluated, Erwin can determine which corporate representatives for 30(b)(6) depositions should be noticed and which design and release engineer's depositions should be taken. Once Ford has provided those witnesses to be deposed, a period of time for evaluating those depositions will be necessary before Erwin can identify which experts the plaintiff must retain. Once the expert is identified, a period of time will be needed for the expert to evaluate all of the above material and form an opinion. At that point the plaintiff will be ready to produce reports.

**Ford's Statement:** Ford states that this action arises out of an incident involving a 2010 Ford Edge vehicle identified by Vehicle Identification Number ("VIN") 2FMDK3IC2ABA19053.

**Scope of Discovery.** The 2010 Ford Edge side airbag supplemental restraint systems are comprised of numerous components and sub-components. The major components are the airbag modules, the restraints control module ("RCM"), and the sensors. Ford does not manufacture these components. Instead, Ford obtains these components from various suppliers. The side airbag and side curtain airbag modules in 2010 Ford Edge vehicles were supplied by Takata, 2500 Takata Drive, Auburn Hills, Michigan 48326. The sensor assemblies and RCM contained in the airbag supplemental restraint system installed in 2010 Ford Edge vehicles were supplied by Robert Bosch Corporation ("Bosch"), 38000 Hills Tech Drive, Farmington Hills, MI 48331. Ford believes that Takata and Bosch may have manufactured other sub-assemblies and components of the side and curtain airbag supplemental restraint systems, and that the suppliers to Takata and Bosch may have manufactured other sub-assemblies and components of those assemblies. The number and location of the sensors varies among airbag systems and vehicle lines.

To determine which side airbag supplemental restraint systems were similar to the 2010 Ford Edge, Ford considered, among other things:

- the supplier of the airbag modules;
- the characteristics of the airbag module, including but not limited to the size, shape, volume, venting, and types of inflator;
- the supplier of the sensors;
- the location(s) of the sensors;
- the number of sensors;
- calibration of the sensors;
- mounting configuration of the sensors (bracket design); and
- the type of restraints control module.

Further, Ford considered the structure of the 2010 Ford Edge. The structure of the vehicle plays a significant role in determining the characteristics of the side and curtain airbag supplemental restraint system. The unique crash pulse signature of each vehicle platform is determined by the vehicle's structural configuration. In this respect, the side airbag supplemental restraint system installed in 2007-2014 U387 Ford Edge and 2007-2015 U388 Lincoln MKX vehicles sold in North America is unique and substantially different from the side and curtain airbag supplemental restraint system installed in any other vehicle platform or program. Similarly, the side structure of 2007-2014 U387 Ford Edge and 2007-2015 U388 Lincoln MKX vehicles is substantially similar. For these reasons, Ford maintains that the scope of its discovery and disclosures is appropriate with respect to the side structure and side and curtain airbag supplemental restraint systems installed in 2007-2014 Ford Edge and 2007-2015 Lincoln MKX vehicles sold in North America.

(b) All fact discovery shall be commenced in time to be completed by November 3, 2017.

1. Maximum of 25 interrogatories by each party to any other party, including all parts and subparts. Ford has already responded to 12 interrogatories served by Plaintiff while this case was pending in the United States District Court, Middle District of Florida.

2. In the absence of agreement among the parties, contention interrogatories, if filed, shall first be addressed by the party with the burden of proof no later than the date established for the completion of document production, with the responsive answers due within thirty (30) days thereof. The adequacy of all such interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.

    3. Maximum of 30 requests for admission by each party to any other party, including all parts and subparts.

    4. Maximum of 45 requests for production by each party to any other party, including all parts and subparts.  Ford has already responded to 31 requests for production served by Plaintiff while this case was pending in the United States District Court, Middle District of Florida.

    5. Discovery of paper and electronic documents (hereafter, "e-discovery") shall be completed on or before the fact discovery cut-off of November 3, 2017.  E-discovery shall be governed by this Complex Case Scheduling Order.  Specifically, with respect to e-discovery, the parties agree:

  **Method of Producing Electronic Discovery**.  Electronic discovery shall be produced to the requesting party in a commercially reasonable manner or in the manner kept in Ford's regular course of business, whichever is less burdensome and economical for the producing party.  If a party requests documents that are stored in an electronic format, the disclosing party may provide the requesting party printed copies of the documents or may provide the requesting party electronic copies of the documents in a reasonably usable form on CD, DVD, hard drive, by e-mail, or by other electronic means.  Ford agrees to produce documents such as specifications and crash and sled test reports in PDF format.  Ford notes that documents produced in PDF format have not been OCR'ed and are not text searchable.  If Ford is unable to produce documents in PDF or native format (e.g., Microsoft Word or Excel) where applicable, the parties will meet and confer about production in an electronic multi-page tiff format containing viewable images and corresponding OCR text load files that will allow Plaintiff to load these materials into a standard, industry-wide desktop document management program such as Summation or Concordance.

  Production formats may also include drawings in the form of tiff, jpeg, pdf files, etc. and CAD files such as IDEAS files, IDEAS NG files, CATIA, JT files, etc., or various combinations thereof.  With respect to the CAD models referenced herein, Ford does not own the software to read these files.   Ford does, however, use industry standard software that is commercially available to Plaintiff and their experts.  Ford is contractually prohibited from reproducing the software to third parties as it is proprietary to the vendor.  Ford will produce any CAD models upon the entry of an appropriate sharing protective order in this case.  Likewise, Ford will produce any CAE and MADYMO models in the format in which they are utilized or stored in the normal course of business, which may require special software not licensed by Ford to be produced to third parties.  MADYMO and CAE models are produced on CDs, in their native format, which require special software not licensed by Ford to be viewed.  While Ford does not own these software programs, the programs necessary to run these models are commercially available from third parties.  Ford also notes that many consultants are available to assist Plaintiff in viewing the models at issue.  If during the pendency of this case, Plaintiff identifies certain

CAD or CAE models that he cannot view, Ford agrees to meet and confer and explore alternative arrangements with Plaintiff. The parties agree that they will provide such documents to each other in the same manner in which they provide such documents to their own outside experts; however, the parties agree to meet and confer as proprietary software programs may be implicated prohibiting their disclosure to third parties.

**Timing of Production of Electronic Discovery and Other Documents**. Ford anticipates that document production will be made within approximately 30 days following the exchange of Initial Disclosures, serving responses to discovery, or within 30 days upon entry of a Protective Order, if applicable. If Ford anticipates an issue with this timing, Ford will initiate a meet and confer with Plaintiff's counsel.

**Cost and Burden of Producing Electronic Discovery**. Unless the party with the burden of bearing the costs as specified below demonstrates to the Court that the cost is overly burdensome, the following presumption applies: To the extent that the parties request files or copies of documents, the parties agree that such requests shall be provided to the other party in the normal and traditional course of discovery, with the producing party bearing the cost of assembling the requests, except that Ford will seek reasonable reimbursement for production costs as described below. While Ford cannot determine in advance the cost of all of the documents until it receives discovery requests from Plaintiff, Ford offers the following cost estimations:

- Paper copies – standard (black/white)    $0.06 per page
- Paper copies – other    $0.18 per page
- Color copies – standard    $0.40 per page
- Duplicating DVD/CD    $10.00
- Drawings – per square foot    $0.84
- Digital copies – per CD/DVD    $10.00
- Tests (Crash, sled, etc.) – cost dependent upon the number of media required to hold the requested tests
- CD (cost per CD)    $10.00
- DVD (cost per DVD)    $10.00
- Videos (cost per VHS)    $10.00
- Hard drive cost dependent upon size    TBD
- Other    TBD

The parties agree that Plaintiff will not be required to pay for copies of materials deemed to be duplicate or irrelevant.

**Confidentiality Protective Order**.  A Confidentiality Protective Order is necessary at this time.  The parties agreed upon a Confidentiality Protective Order that was entered in the United States District Court, Middle District of Florida.  The parties will resubmit the Order to the Court for entry.

**Privileged Data**.  There is no duty to disclose privileged documents or information.  However, the parties agree to meet and confer concerning privileged documents or information after the initial CMC.  No party is required to conduct a search or prepare a privilege log for any discovery request or portion thereof to which objections have been made pursuant to Fed. R. Civ. P. 34(2)(b)(C) or other applicable Fed. R. Civ. P. until the objections have been overruled and the right to object based on the attorney-client privilege or work product doctrine is preserved until that time.  In the event a privilege log is required, the parties agree that a categorical privilege log is permissible in this action.  The parties further agree that there is no duty to include on the privilege log those documents created after the filing of the original complaint in this matter, March 14, 2016.  Supplemental privilege logs may be provided as discovery continues.  Any party may move the court for an order compelling the production of any documents or information identified on any other party's privilege log.  If such a motion is made, the party asserting privilege shall have the opportunity to respond.  If a party inadvertently produces information that is subject to a claim of privilege, the parties agree to follow the procedure set forth in Fed. R. Civ. P. 26(b)(5)(B) or in the agreed upon Protective Order.

**Electronic Discovery Sources**.  At this time, the parties do not know of any additional electronic discovery issues that may arise in this matter.  If additional issues arise not governed by this plan, the parties agree to work in good faith to resolve the matter before bringing the issue to the Court's attention.  Ford discloses that it may support its claims and defenses using ESI located in, or reports generated from, the following databases:

- **CILOG & STEST**.  These two databases are access tools for the SPRITE database containing certain data and reports on crash and sled tests.

- **WERS**.  The Worldwide Engineering Release System is an information system that manages and communicates parts information to organizations and downstream systems.

- **FORDDOC**.  This database is used to access engineering drawings and specifications.

- **AWS**.  The Analytical Warranty System (AWS) contains warranty claims and selected vehicle information to support common global warranty reporting, analysis, and feedback processes for model years 1991 and forward.

- **GCQIS**.  The Global Common Quality Indicator System ("GCQIS") is a database providing access to selected vehicle concern information originating from dealerships and internal Ford sources.

- **FMC360**. The FMC360 application, which has replaced and contains all records formerly maintained in Ford's Master Owner Relations System or "MORS," is a database containing summaries of customer contact information.

- **CCRG**. The Critical Concerns Review Group Report Database contains copies of Critical Concern Review Group reports of potentially critical vehicle concerns.

- **OASIS**. Global Online Automotive Service Information System (GOASIS) provides dealers with selected vehicle and technical service information for a specific VIN, including Technical Service Bulletins ("TSB") and Special Service Messages ("SSM").

- **DURIS**. The Durability Information System ("DURIS") is used to track various types of vehicle durability testing, including Providing Ground test schedules, program status, vehicle incident and concern reporting, driver assignment and test status.

- **NAVIS** - The North American Vehicle Information System ("NAVIS") is an electronic data source containing selected sales and production information about vehicles manufactured by Ford Motor Company. Among other things, NAVIS includes certain data concerning sales of vehicles by Ford dealers.

Further, Ford uses other software tools, utilized throughout the automotive industry, for the design and development of its vehicles. Such software tools include computer aided design tools, computer aided engineering tools, and motion simulation tools. This software may be proprietary and licensed from third-party supplies. UNIX systems and Numerically Intensive Computers are used to generate and/or store the ESI utilizing this software. The parties agree that they will provide such documents to each other in the same manner in which they provide such documents to their own outside experts; however, the parties agree to meet and confer as proprietary software programs may be implicated prohibiting their disclosure to third parties.

      6. Maximum of 15 oral fact depositions by plaintiff(s) and 15 by defendant(s). Each oral fact deposition limited to a maximum of 7 hours unless extended by agreement of parties.

Ford Corporate Representative and/or Employee Depositions. The parties agree that for Ford corporate representative or employee depositions, Plaintiff shall be limited to three depositions (e.g. one employee and two corporate designee). In the event that Ford considers that the second 30(b)(6) deposition is unnecessary, Ford can move the Court to prohibit it. The corporate representative deposition(s) should not exceed five topics over the course of five hours. No additional corporate representative depositions shall be allowed without a showing of good cause or by agreement of the parties. The parties further agree that the questioning party (1) will serve a notice of deposition for any corporate representative deposition and such notice will identify with specificity the topics at issue, (2) will identify, in advance of the deposition, any

exhibits to be used at corporate designee or employee depositions, and (3) will not exceed the scope of deposition topics identified in the notice of deposition.

        (d)    Expert discovery shall be commenced in time to be completed by March 16, 2018.

        1.    Plaintiff's expert reports due December 1, 2017. Ford's expert reports due February 2, 2018. Supplemental reports due March 2, 2018.

        2.    Expert depositions to be limited to a maximum of 7 hours unless extended by agreement of the parties.

        3.    All Daubert motions shall be filed on or before April 6, 2018.

        (e)    Supplementations under Rule 26(e) due in accordance with the Federal Rules.

        (f)    **Discovery Disputes**.

        1.    Prior to the filing of any discovery motion, the parties agree to meet and confer, including a written exchange of the positions of each party and an in person meeting to discuss the dispute. The parties must specify the concerns with sufficient specificity to allow the other party to respond, including citing request numbers and the alleged specific deficiency. If after substantive meet and confer efforts the parties cannot resolve the discovery disputes, and prior to filing any discovery motions, the court shall conduct an in-person discovery status conference, the time to be allotted equally among the parties. **No motions to compel or for protective order shall be filed absent prior approval of the court.**

        2.    The court shall remain available to resolve by telephone conference disputes that arise during the course of a deposition.

        (g)    **Fact Witnesses to be Called at Trial**. Within one (1) month following the close of expert discovery, each party shall serve on the other parties a list of each fact witness (including any expert witness who is also expected to give fact testimony), who has previously been disclosed during discovery and that it intends to call at trial. Within one (1) month of receipt of such fact witness list, each party shall serve a list of each rebuttal fact witness that it intends to call at trial. The parties shall have the right to depose any such fact witnesses who have not previously been deposed in this case. Such deposition shall be held within one (1) month after service of the list of rebuttal fact witnesses and shall be limited to twenty (20) hours

per side in the aggregate unless extended by agreement of the parties or upon order of the court upon good cause shown.

       3.      **Joinder of other Parties and Amendment of Pleadings**. All motions to join other parties and amend the pleadings shall be filed on or before July 13, 2017.

       4.      **Settlement Conference**. Pursuant to 28 U.S.C. § 636, this matter is referred to a Magistrate Judge[1] for the purposes of exploring ADR.

       5.      **Summary Judgment Motions (only in cases where a jury demand has been made)**

          (a)      All summary judgment motions shall be served and filed on or before April 6, 2018. No summary judgment motion may be filed more than ten (10) days from the above date without leave of the court.

          (b)      Opening briefs shall be served and filed by the party having the burden of proof on the ultimate issue on or before April 6, 2018.

          (c)      Opening briefs or combined opening-answering briefs on shall be served and filed on or before April 20, 2018.

          (d)      Where cross-motions are not presented, answering and reply briefs shall be due as calculated from the filing of any opening brief as per LR 7.1.2.

          (e)      Where cross-motions are presented, a surreply brief will be permitted, to be filed 7 days from the filing of the reply brief.

          (f)      The hearing on the motion(s) for summary judgment will be heard on _____ ___, 2018, at _____ a.m./p.m.

       6.      **Applications by Motion**. Any application to the court shall be by written motion filed with the clerk. **The court will not consider applications and requests submitted by letter or in a form other than a motion**, absent express approval by the court.

          (a)      Any non-dispositive motion should contain the statement required by D. Del. LR 7.1.1.

          (b)      No telephone calls shall be made to chambers.

---

[1] The court may also refer ADR to a Special Master.

    (c) Any party with an **emergency** matter requiring the assistance of the court shall e-mail chambers utilizing the "Email Request for Emergency Relief" and "Opposing Counsel's Response" forms posted on Judge Robinson's website and email the completed forms to slr_civil@ded.uscourts.gov. The email shall provide a short statement describing the emergency. NO ATTACHMENTS shall be submitted in connection with said emails.

  7. **Motions in Limine**.  No motions in limine shall be filed; instead the parties shall be prepared to address their evidentiary issues at the pretrial conference and during trial (before and after the trial day).

  8. **Pretrial Conference**.  A pretrial conference will be held on _____ ____, 2018, at _____ a.m./p.m. in courtroom 4B, fourth floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

  9. **Trial**.  This matter is scheduled for a 10 day jury trial commencing on May ____, 2018, in courtroom 4B, fourth floor Federal Building, 844 King Street, Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

YOUNG CONAWAY STARGATT & TAYLOR LLP

By: /s/ Timothy E. Lengkeek
Timothy E. Lengkeek, Esq. (DE Id. # 4116)
1000 N. King Street
Wilmington, DE 19801
T: (302) 571-6605
F: (302) 576-3308
tlengkeek@ycst.com
*Attorney for Plaintiff*

THE BODIFORD LAW GROUP

By: /s/ Raymond O. Bodiford
Raymond O. Bodiford, Esq. – Pro Hac Vice
121 South Orange Avenue, #1150
Orlando, FL 32801
T: (407) 423-9728
ray@bodifordlawgroup.com
*Attorneys for Plaintiff*

LAW OFFICES OF STEPHEN VAN GAASBECK

By: /s/ Stephen E. Van Gaasbeck
Stephen E. Van Gaasbeck, Esq. – Pro Hac Vice
5511 W 1h 10 #2
San Antonio, TX 78201
T: (210) 924-9294
sevg@aol.com
*Attorneys for Plaintiff*

WHITE AND WILLIAMS LLP

By: /s/ Christian J. Singewald
Christian J. Singewald, Esq. (DE Id. # 3542)
Timothy S. Martin, Esq. (DE Id. # 4578)
824 North Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
T: (302) 654-0424
F: (302) 654-0245
singewaldc@whiteandwilliams.com
martint@whiteandwilliams.com
*Attorneys for Defendant Ford Motor Company*

Dated: December 5, 2016